IN THE MATTER OF THE PETITION OF THOMAS H. WALTER AND OTHERS TO VACATE AN ASSESSMENT, ETC.

*Repeal by implication—section 2 of chapter 52 of 1852 was repealed by chapter 697 of 1867.*

Chapter 697 of 1867,—conferring upon the Commissioners of Central Park the exclusive power to lay out and establish streets, avenues, roads, etc., and to alter and amend the grades of any road, street or avenue retained, and to establish new grades for all other streets, avenues or roads, within a certain portion of the city therein specified, —repealed, by necessary implication, as to the said portion of the city, the provision of section 2 of chapter 52 , of 1852, requiring the consent in writing of two-thirds of the owners of the land, in lineal feet, fronting on each side of any street or avenue, to be obtained, before any change in the established grade thereof could be made. (DAVIS, P. J., dissenting.)

APPEAL from an order made at a Special Term denying an application to vacate an assessment.

The assessment was laid for the expenses of regulating, grading, curbing, flagging and guttering Fifth avenue, between Ninetieth and One-Hundred-and-Twentieth streets. The application of the petitioners to have it vacated, so far as it affected their property fronting on the avenue, was denied.

*G. S. Wilkes*, for the petitioners and appellants.

*E. Henry Lacombe*, for the Mayor, etc.

DANIELS, J. :

The objection taken to the regularity of the proceeding, resulting in the improvement and the assessment complained of, is that the work was directed and performed without first obtaining the consent in writing of two-thirds of the owners of the land in lineal feet fronting on each side of the avenue, as that had been required by section 2 of chapter 52 of Laws of 1852. And if that act had remained in force, there can be no doubt but that the objection would have been sound. For the improvement appears to have been made without that assent. But by later legislation the system, previously adopted for the improvement of this avenue and other neighboring streets, was changed. By chapter 697 of the Laws of 1867, the exclusive power to lay out and establish streets, avenues, roads, etc., and to alter and amend the grades of any road, street or avenue retained, and establish new grades for all other streets, avenues or roads, within that part of the city bounded northerly by the southerly side of One-Hundred-and-Fifty-fifth street, easterly by the westerly side of the Eighth avenue, southerly by the southerly side of Fifty-ninth street, and westerly by the Hudson river, and also within a space of three hundred and fifty feet in width surrounding the Central Park, was reposed in the Commissioners of that park. (2 Laws of 1867, p. 1748, § 1.) And while they did not have the power to do it themselves, the law provided that, upon the requisition of these commissioners, the departments authorized by law to do it, should proceed forthwith to make such improvements, as regulating, grading, paving, sewering, curbing and guttering, within that district, as properly came under their respective powers. (Id., p. 1753, § 6.) All that the law required, as the authority for the work, was this requisition of the commissioners. Where that was made, it was the unqualified duty of the proper departments forthwith to make the improvement. And this, with the subsequent change made, was ample authority for what was done upon this avenue up to and including One-Hundred-

and-Tenth street. For it was admitted as a fact that this avenue was within three hundred feet of the Central Park. By chapter 626 of Laws of 1870, authority of a similar nature over the northerly portion of the avenue, beyond One-Hundred-and-Tenth street, was conferred upon the Department of Public Parks. And as to grading, regulating, paving, sewering and otherwise improving and maintaining it, the avenue was placed under the management of that department. (2 Laws of 1870, p. 1456, §§ 4, 5.) And by section 7 of chapter 872 of the Laws of 1872, all the powers derived from both these acts were transferred to the Department of Public Works, which seems to have done the work and made the improvements, to avoid the expenses of which this proceeding has been taken. As to this work, the Legislature prescribed a system different from that created by chapter 52 of the Laws of 1852. It was within the power of that body to make the change. And it did so by removing the district, in which the Fifth avenue was situated, from the restriction imposed by the previously existing law. The systems were wholly different; and, by the terms defining the authority under which the improvement should be made, the restraint, previously subjecting it to the written consent of the owners of the property, was removed. The former provision was repugnant to those afterwards adopted, and, to that extent, it was superseded. The order made appears therefore to have been right, and it should be affirmed.

BARRETT, J.:

I am satisfied that it was the legislative intent, in inaugurating the new system provided for in chapter 697 of Laws of 1867, to remove the territory embraced within the boundaries of the new jurisdiction from the general restriction of section 2 of chapter 52 of Laws of 1852. Repeal by implication is of course not favored. But when the nature and extent of the contemplated improvements are considered, and the fact that such improvements might have been frustrated or greatly impeded by requiring, at each step involving a change of grade, the consent of two-thirds of the adjoining landowners, there can be little doubt that the latter requirement is inconsistent with the spirit of the act, the effective execution of its

purpose, and the wide and exclusive power thereby conferred. It was not a mere transfer of the old power to new officials, leaving the restriction untouched, but a carving out of new and independent functions to be exercised within a limited area for a special and useful public purpose.

I therefore concur with Mr. Justice DANIELS that the order should be affirmed.

DAVIS, P. J., dissenting:

I do not doubt that the new system gave power to make the improvements to the Park Commissioners, and that the exercise of that power would be lawful; but the question is at whose expense it could be done. The statute protected the land-owners from further assessment so far as to require the consent of two-thirds before the expense could be charged upon them. That protection was never repealed by express enactment; and it was not repealed by necessary implication, because the new powers could all be exercised by the commissioners without the consent of two-thirds of the owners if done *at the expense of the general tax-payers*. If the work had been done in that way, no owner could have complained because the grade was changed; but when it was assumed to make that change at *the expense of the owners* the statute requiring the assent protected them from bearing the whole expense of the work. I do not see why a statute authorizing work of this kind to be done by a public board, must of necessity be construed as repealing the provisions that protected private owners from bearing new burdens caused by the change of grades already lawfully established at their private expense. To give it that construction it must be held that the work could not be done at all except by assessing its expense upon private owners. I think that is putting a construction upon the statute not necessarily demanded. If such a change was necessary for public benefit or convenience in carrying out the park system, it ought on general principles, to be paid for by the public; and I conceive it was not the intention of the legislature to compel private owners to bear those expenses without their free consent to be given in the mode required by

existing laws. I therefore must dissent from the conclusion of my brethren.

Order affirmed.